FILED
JUL 2 4 2020
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*Ex rel.* Philip Smith, James McKinnon, Clifford Jackson<br><br>Plaintiffs,<br><br>vs.<br><br>DYNCORP INTERNATIONAL LLC.<br><br>Defendant. | ) Civil Action No. 1-20CV857 (RDA/TCB)<br>)<br>)<br>) **FILED *IN CAMERA* AND**<br>) **UNDER SEAL**<br>)<br>) **FALSE CLAIMS ACT**<br>)<br>)<br>) **JURY TRIAL DEMANDED**<br>) |

**PLAINTIFF'S COMPLAINT PURSUANT TO 31 U.S.C. §§ 3729-3732 OF THE FEDERDAL FALSE CLAIMS ACT**

The United States of America, by and through *qui tam* relators Philip Smith, James McKinnon, and Clifford Jackson (Relators), bring this action under 31 U.S.C § 3729, *et seq.*, as amended (False Claims Act) to recover all damages, penalties, and other remedies established by the False Claims Act on behalf of the United States.

**BRIEF CASE OVERVIEW**

*"The contractor shall provide messing for contract employees. Perform all food service operations in compliance with US and HN health codes."*

"THE ONLY BENEFITS WHICH THE EMPLOYER IS OBLIGATED TO PROVIDE THE EMPLOYEE ARE THOSE BENEFITS LISTED IN OR EXPLICITLY REFERRED TO IN THIS EMPLOYMENT AGREEMENT."

DynCorp secured a government contract worth nearly half a billion dollars, but it did not feed its employees as the contract explicitly required. DynCorp knew its obligations to feed it employees under the contract; indeed, it did so under the predecessor contract. But in the interest of raising its profits at the expense of the taxpayer and its own employees, DynCorp avoided

2

paying for the contracted messing benefits by: 1) tricking the employees into thinking that they were not entitled to food benefit by omitting that benefit from their employment contracts; and 2) eliminated messing benefits as a line item cost on their bid to the government to secure the contract. DynCorp nevertheless charges the government for this contracted benefit, even if it does not list the costs as a lined item expense. As a result, the DynCorp is liable under the False Claims Act because every claim it submits to the government for payment are false because they reflect a demand for payment of services not rendered.

## PRELIMINARY STATEMENT

1. This is an action to recover damages and civil penalties on behalf of the United States of America, for violations of the False Claims Act arising from false or fraudulent records, statements, or claims, or any combination thereof, made, used or caused to be made, used, or presented, or any combination thereof, by the defendant, its agents, employees, or co-conspirators, or any combination thereof, with respect to false claims regarding meal allowances to employees.

2. The False Claims Act was enacted during the Civil War. Congress amended the False Claims Act in 1986 to enhance the Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the False Claims Act, which Congress characterized as the primary tool for combating government fraud, was in need of modernization. Congress intended that the amendments create incentives for individuals with knowledge of fraud against the government to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the Government's behalf.

3. The False Claims Act provides that any person who knowingly submits, or causes the submission of, a false or fraudulent claim to the U.S. Government for payment or approval is liable for a civil penalty of up to $23,331 for each such claim, plus three times the amount of the damages sustained by the Government.

4. The Act allows any person having information about a false or fraudulent claim against the Government to bring an action for himself and the Government, and to share in any recovery. The Act requires that the complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time) to allow the Government time to conduct its own investigation and to determine whether to join the suit.

5. In *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016), which is arguably the most influential False Claims Act decision since Congress' 1986 False Claims Act amendments, the Court ruled that the statute can only be successfully invoked when a knowingly false statement has an actual impact, rather than a merely theoretical impact, on the government's determination to pay a claim.

6. This is an action for treble damages and penalties for each false claim and each false statement under the False Claims Act, 31 U.S.C. §3729, et seq., as amended.

**PARTIES**

7. Relator, Philip Smith, is an individual and citizen of the United States of America, born in Cleveland, Ohio, currently stationed in Doha Qatar under the employment of DynCorp.

8. Relator, James McKinnon, is an individual and citizen of the United States of America, born in Montgomery, Alabama, currently stationed in Doha Qatar under the employment of DynCorp.

9. Relator, Clifford Jackson, is an individual and citizen of the United States of America, born in Mobile, Alabama, currently stationed in Doha Qatar under the employment of DynCorp.

10. Defendant, DynCorp International LLC ("DynCorp"), is a corporation with its principal place of business located at 1700 Old Meadow Road, McLean, Virginia 22102. DynCorp International Inc. is the sole parent and member of the company.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, and 31 U.S.C. §3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730.

12. There have been no public disclosures of the allegations or transactions contained herein that bar jurisdiction under 31 U.S.C. §3730(e).

13. This Court has personal jurisdiction over the defendant pursuant to 31 U.S.C. §3732(a) because that section authorizes nationwide service of process and because the defendant has at least minimum contacts with the United States, and can be found in, reside, or transact or have transacted, business in the District of Eastern Virginia.

14. Venue exists in the United States District Court for the District of Eastern Virginia pursuant to 31 U.S.C. § 3730(b)(1) because the defendant has at least minimum contacts with the United States, and the defendant can be found in, reside, or transact or have transacted business in the District of Eastern Virginia.

## APPLICABLE LAW

15. False Claims Act liability attaches to any person who knowingly presents or causes a false or fraudulent claim to be presented for payment, or to a false record or statement made to get a false or fraudulent claim paid by the government. 31 U.S.C § 3729(a)(1)&(2).

16. Under the False Claims Act, "knowing" and "knowingly" mean that a person, with respect to information:

    i. has actual knowledge of the information;

    ii. acts in deliberate ignorance of the truth or falsity of the information; or

    iii. acts in reckless disregard of the truth or falsity of the information,

    and no proof of specific intent to defraud is required. 31 U.S.C § 3729(b).

17. The False Claim Act is violated not only by a person who makes a false statement or a false record to get the government to pay a claim, but also by one who engages in a course of conduct that causes the government to pay a false or fraudulent claim for money.

## INTRODUCTION

18. The three Relators in this case will be referred to as "Relator [last name]" or "Relators" collectively.

19. DynCorp will now be referred to as "Defendant."

20. The unlawful withholding of per diem meal allowances, catered meals, mess service, and like permutations will be referred to as "meals."

## FACTS

### A. The Contract ("WRM III")

21. DynCorp has submitted false claims to the government under FA4890-15-R-0004 Headquarters, Air Combat Command, Acquisition Management & Integration Center (ACC AMIC) for the War Reserve Materiel (WRM) Program and Exercise & Contingency Logistics Support at 6 storage and maintenance sites located in Kuwait, Sultanate of Oman, United Arab Emirates (UAE) and Qatar ("the Contract" or "WRM III").

22. WRM III was solicited on or about 2 September 2015.

6

23. In Section **4.5. Food Service Operations**, WRM III provides that "the contractor shall provide messing for contract employees. Perform all food service operations in compliance with US and HN health codes."

24. In further subsections of WRM III, specifically Sections 4.5.1., 4.5.2., and 4.5.3., the Contract provides that the awardee (ultimately, DynCorp) must provide for "catering of meals" in Thumrait, "three nourishing meals a day" in Masirah, and "shall feed or profile food allowances for all contract employees" in a host of other foreign jurisdictions, specifically including in Qatar.

25. The material nature of the provision of meals to employees was well known to all bidders, including Defendant.

26. Indeed, not only was the provision of meals an express term of WRM III, but it was also the subject of industry questions that were submitted by prospective bidders and answered by the government.

27. For example, in response to an industry question on section 4.5.2., the government advised that "offerors should propose [reimbursable food costs] based on food supplies purchased on the local economy which would be comparable rates that the [Royal Air Force of Oman] would provide."

28. The government made a single award of WRM III to DynCorp International, Inc, 1700 Old Meadow Road, McLean, VA 22102, on 23 Jan 2017 in the amount of $439,202,108.83 (includes 6-month extension).

29. WRM III is a hybrid contract, meaning it has a mix of firm fixed price ("FFP"), cost plus fixed fee ("CPFF"), and cost type contract line item numbers ("CLINs").

30. The period of performance is as follows:

7

    i. Phase-In Period - 1 Feb 17 - 30 Apr 17

    ii. Base Period - 1 May 17 - 30 Sep 17

    iii. Option Year 1 - 1 Oct 17 - 30 Sep 18

    iv. Option Year 2 - 1 Oct 18 - 30 Sep 19

    v. Option Year 3 - 1 Oct 19 - 30 Sep 20

    vi. Option Year 4 - 1 Oct 20 - 30 Sep 21

    vii. Option Year 5 - 1 Oct 21 - 30 Sep 22

    viii. Option Year 6 - 1 Oct 22 - 30 Sep 23

    ix. Option Year 7 - 1 Oct 23 - 30 Sep 24

31. Particularly relevant to this action is Mod P00018, dated 25, July 2018.

32. Mod P00018, at **4.5.3 Other Sites**, provides that "[t]he contractor shall feed or provide food allowance for all contract employees at: Salalah Port, Oman; Al Udeid AB, Qatar; Al Jaber, Kuwait; Abu Dhabi and Al Dhafra AB, UAE. The contractor shall be completely responsible for feeding its employees."

33. Mod P00018 is identical to the original Contract with respect to the awardee's obligation to provide meals to its employees.

34. As such, Mod P00018 served as a reminder and reaffirmation to Defendant that it was obligated to provide meals to its employees.

### B. The Relators.

35. Relator, Philip Smith, has been working for Defendant in Qatar on and off since 2013.

36. Relator Smith started as a Munitions Inspector, working with this title from July 2013 to December 2017.

37. In conformance with WRM III, Relator Smith received a meal allowance amounting to $420 per 28 days of work from the time he began working for Defendant until April 2017.

38. In April of 2017, Defendant intentionally stopped paying for meals.

39. Relator Smith resumed work for Defendant under the Contract on or about October 2019 as a Munition Quality Control/Safety for Defendant.

40. To this day, Defendant continues to intentionally withhold meals to Relator Smith as is certified to the government it would when it won the award for WRM III.

41. Relator, James McKinnon, has been working for Defendant since February 2015.

42. Relator McKinnon, from February 2015 to June 2017, worked for Defendant as a Munitions Inspector stationed in Qatar.

43. Relator McKinnon received a meal allowance amounting to $420 per 28 days of work from the time he began working for Defendant until April 2017.

44. During this time, Relator McKinnon was working on WRM III's predecessor contract, WRM II.

45. WRM II, also serviced by DynCorp, also provided that employees were entitled to meals.

46. In April of 2017, Defendant intentionally stopped paying for and/or providing for meals despite certifying to the government that it would do so under WRM III.

47. Relator McKinnon resumed work in December 2018 as a Munition Inspector for Defendant.

48. To this day, Defendant continues to intentionally withhold meals to Relator McKinnon as is certified to the government when bidding on WRM III.

49. Relator, Clifford Jackson, has been working for Defendant since May 2013 as a Munition Inspector.

50. Relator Jackson received a meal allowance amounting to $420 per 28 days of work from the time he began working for Defendant on WRM II until April 2017.

51. In April of 2017, Defendant intentionally stopped paying Relator Jackson for meals as required under WRM III.

52. To this day, Defendant continues to intentionally withhold meals to Relator Jackson as is certified to the government when bidding on the contract.

53. For example, Relator Jackson's pay stubs from 2013 have a lined item called "Taxable Per Diem – Salaried."

54. These paystubs reflect Defendant's knowledge that it was required and obligated to pay meals when a government contract (then WRM II and now WRM III) so require.

55. Conversely, Relator Jackson's paystubs from 2017 to present do not include a lined item for meals, because Defendant does not compensate Jackson for such costs under WRM III and Mod P00018.

56. Moreover, none of Relators' paystubs for work performed under the Contract include a lined item for meals because Defendant does not compensate Relators for such costs as required under WRM III and Mod P00018.

57. All Relators have been employed by Defendant as full-time employees.

58. Each Relator is classified as an hourly employee.

59. Each Relator works 48 hours per week, 6 days a week in 8 hour shifts.

60. Assuming no leave or vacation time is taken in any given calendar year, Defendant is obligated to provide each Relator up to 936 meals per calendar year (3 meals x 6 days x 52 weeks).

61. Further, per WRM III, meals must be provided "in compliance with US and HN health codes."

62. Despite this requirement, Defendant has not provided meals to Relators since April 2017.

63. On information and belief, Defendant does not provide meals that are in compliance with US and HN health codes for any other employees working under WRM III.

64. Defendant has approximately 300 employees stationed in Qatar working under WRM III.

65. Accordingly, Relator is obligated to provide up to 280,000 US/HN compliant meals in Qatar alone (3 meals x 6 days x 52 weeks x 300 employees).

66. On information and belief, Defendant employs hundreds of other employees at the other locations specified in the Contract.

67. On information and belief, Defendant does not provide US/HN compliant meals to any of these other employees in any location specified under WRM III.

68. Relators are informed and believe that Defendant does not provide meals to any other employee in any location specified under WRM III because they understand that removal of meals was a companywide policy instituted against all employees working under the Contract.

69. On average, Relators, who are required to live in DynCorp apartments, spend approximately $1,100 a month to feed themselves without "going out to eat."

70. On information and belief, Defendant bills the government for US/HN meals under WRM III because it was priced or factored into its bid on the Contract even if meals were not specifically listed as a lined item cost.

11

## C. <u>DynCorp Intentionally Submits False Claims and Conceals Evidence of that Fact.</u>

71. In May of 2020, Relator Smith contacted the General Inspector, Mr. Anthony Foerster, in regard to Defendant's unlawful denial of meals to its employees.

72. Mr. Foerster advised Relator Smith that he would have to raise the issue to the Project Manager, Mike Garett.

73. Mr. Garett is a civilian contractor employed by Defendant and exercises managerial responsibility on behalf of the company.

74. Mr. Garett refused to provide Relator Smith any material explanation as to why Defendant was violating the terms of WRM III.

75. However, based on Mr. Garrett's conversation, Relator Smith understood that Mr. Garrett was aware of the unlawful refusal to provide meals, that he had been aware of it for some time, and that he was disinclined to remedy the unlawful conduct.

76. In fact, Mr. Garrett indicated that Defendant had approval to violate WRM III.

77. Shortly thereafter, Relator Smith advised Mr. Forester of the substance of his conversation with Mr. Garrett.

78. Mr. Foerster advised Relator Smith to submit an Inspector General Complaint Form ("IGCF") to USAFCENT.

79. The Relators, collectively, submitted the IGCF on May 10, 2020.

80. As a result, Relators are the original source of information that is the subject of this action.

81. The IGCF specifically focuses on Defendant's unlawful withholding of meals.

82. On June 11, 2020, Anissa Ross, the Contracting Officer ("CO") for USAFCENT WRM Program, responded in writing that Defendant was in compliance with the Contract with the

government because a review of WRM III showed that "there were adequate costs built into the [Relators] salaries to accommodate meals."

83. The CO's response that Defendant was in compliance with WRM III was based on incomplete information.

84. Specifically, the CO did not have access to Defendant's employee contracts during the performance of WRM III and Mod P00018.

85. Indeed, the CO specifically stated, "the government is not privy to the contracts between DynCorp and its personnel."

86. On information and belief, Defendant intentionally withheld its employee contracts from the government during the USAFCENT review.

87. On information and belief, Defendant withheld its employee contracts because if it would have shown the government the contracts, the government would have learned that they contain terms in direct violation of WRM III and Mod P00018, to wit, that the contract disclaims all benefits "listed in or explicitly referred to" on their employment agreements.

88. Messing services, meals, per diems for food, and the like are not "listed in or explicitly referred to" in Relator's employment contracts.

89. Such services, however, are explicitly listed as requirements under WRM III.

90. On information and belief, every other employee working under the Contract have employment agreements that also do not list or explicitly refer to messing services, meals, per diems for food, and like benefits.

91. On information and belief, Defendant withheld the employee contracts from the government so as to evade detection of its unlawful withholding of hundreds of thousands of US/HN compliant meals.

13

92. On information and belief, Defendant withheld US/HN compliant meals to raise its profit margin under WRM III.

93. For example, under WRM III, Defendant is eligible to receive "Incentive" pay for performance.

94. Defendant has received incentive pay for performance under WRM III.

95. On information and belief, Defendant's failure to provide US/HN compliant meals would have materially impacted its entitlement to receive incentive pay or other types of bonus awards.

96. The government, and thus the taxpayer, still pays Defendant the amount needed to cover the meals because of claims submitted by Defendant for payment under WRM III.

97. On information and belief, Defendant saves millions of ill-gotten dollars by failing to provide US/HN compliant meals to its employees while also charging the government millions of dollars for this very same cost.

98. Defendant's refusal to provide US/HN compliant meals to its employees comprises a breach of a material term of WRM III and ModP00018.

99. Defendant in turn knowingly submits false or fraudulent claims to the U.S. Government each time it submits an invoice for payment or approval as related to employee wages reimbursement and other similar costs.

100. On information and belief, Defendant submits its false claims to the government when submitting contract labor hours and all required data fields at http://www.ecmra.mil.

101. On information and belief, Defendant also submits its false claims to the government monthly in the form of "Cost/Schedule Status" reports, which include, *inter alia*, "other personnel costs" under CLIN 0107.

## CAUSE OF ACTION

### *Violations of the False Claims Act*

102. Relator incorporates and re-alleges all of the foregoing allegations herein.

103. Defendant knowingly violated one or more of the following:

    i. Knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval, to wit: labor and cost claims under WRM III and Mod P0008 as related to the costs associated with US/HN compliant meals;

    ii. Knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government, to wit: documents submitted under https://ecrma.mil and "Cost/Schedule Status" reports.

104. The United States, unaware of the falsity of these claims, record, and statements made by the Defendant, and in reliance on the accuracy thereof, paid money to Defendant for the fraudulent claims.

105. The United States and the general public have been damaged as a result of Defendant's violations of the False Claims Act.

## PRAYER FOR RELIEF

106. For the reasons set forth above, Relators, on behalf of the United States, respectfully request this Court to find that Defendant has damaged the United States Government as a result of its conduct under the False Claims Act. Relator prays the Court enter the following relief:

    i. That Defendant be ordered to cease and desist from violating 31 U.S.C § 3729 *et seq.*;

    ii. That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained because of defendants'

actions, plus a civil penalty of not less than $11,463 and not more than $23,331 for each violation of 31 U.S.C § 3729;

iii. That Realtor be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act;

iv. That Relator be awarded all costs of this action, including reasonable attorney's fees and expenses; and

v. That Relator recover such other relief as the Court deems just and proper.

Date: July 24, 2020      Respectfully Submitted,

***Sheridan England***
Sheridan England, Esq.
VSB #92983
S.L. England, PLLC
1800 Diagonal Rd, Suite 600
Alexandria, VA 22314
Phone: 202-489-0720
Sheridan@slengland.com
*Counsel for Relators*

## CERTIFICATE OF SERVICE

I hereby affirm that I filed this Complaint under seal and *in camera* on July 24, 2020. I further certify that I served a copy of this Complaint, inclusive of a Relators' statement and material evidence exhibits on the United States to the following:

Hon. William H. Barr
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
(*BY USPS PRIORITY MAIL*)

Hon G. Zachary Terwilliger
United States Attorney for the Eastern District of Virginia
Justin W. Williams United States Attorney's Building
2100 Jamieson Avenue
Alexandria, VA 22314
(*BY HAND DELIVERY*)

*/s/ Sheridan England*